KNIGHTS OF COLUMBUS BUILDING ASSOCIATION OF BRISTOL, R. I., INC. *vs.* AMOS S. GORHAM *et al.*

FEBRUARY 27, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a bill of complaint brought against the collector of taxes and the assessors of taxes of the town of Bristol praying that the collector be permanently enjoined from selling complainant's real property for certain unpaid taxes and that the assessors be permanently enjoined from assessing such real property in the future.

The ground alleged in the bill for the relief sought is that the complainant's real property is exempt from taxation by virtue of general laws 1923, chapter 58, sec. 2. The cause was heard by a justice of the superior court on bill, answer, replication and proof, and the relief prayed for was granted. From the decree entered in the superior court, in accordance with such decision, the respondents have appealed to this court.

Their reasons of appeal are, substantially, that such decree is against the law, against the evidence, against the law and the evidence and the weight thereof, and that it deprives the

assessors of the right to assess complainant's real property in the future, in the event that it ceased to be qualified for the privilege of exemption under the statute. They stated as a further reason of appeal that certain findings set forth in the rescript of the trial justice are erroneous both as to the law, the evidence and the weight thereof.

The evidence which the complainant presented in support of its bill at the hearing in the superior court was very brief. It consisted substantially of the introduction of a certified copy of its articles of association, a copy of sections 1 and 2 of its by-laws, and the testimony of its treasurer that it owned a certain building situated at 105 State street in the town of Bristol; that this building was rented to Bristol Council No. 379, Knights of Columbus; that the income from said real estate consisted solely of such rent; that, if it was exempt from taxation, there was a net income in its hands which was available for the purposes set out in section 2 of the by-laws and which would be applied thereto; and that otherwise complainant had no net income. The respondents presented no evidence but argued that complainant had not shown that it was such a corporation as was qualified to claim exemption under the statute; and, further, that it was not clear from its by-laws that it was only authorized to apply its net income, if any, to the purposes expressly set out in the statute.

The pertinent part of such statute is as follows: "Sec. 2. The following property shall be exempt from taxation: . . . the property, real and personal, held for or by any fraternal corporation, association or body created to build and maintain a building or buildings for its meetings or the meetings of the general assembly of its members, or subordinate bodies of such fraternity, and for the accommodation of other fraternal bodies or associations, the entire net income of which real and personal property is exclusively applied or to be used to build, furnish and maintain an asylum or asylums, a home or homes, a school or schools, for the free education or relief of the members of such fraternity, or for the relief,

support and care of worthy and indigent members of the fraternity, their wives, widows or orphans . . . ."

The complainant is not a fraternal corporation. It was not organized by a fraternal organization to hold real property for such an organization. It is a business corporation organized in 1921, under the provisions of public laws 1920, chapter 1925, title II. Section 3 of that title expressly provides that it "shall apply to every corporation having a capital stock and established for the purpose of carrying on business for profit . . . ." It appears from the complainant's articles of association that its capital stock is $15,000, divided into fifteen hundred shares each of the par value of $10. Aside from its name, the only reference to a fraternal order in complainant's articles of association is contained in the third, which states: "Said corporation is formed (as permitted by Sec. 4 of said Chapter 1925) for the purpose of building and maintaining a home for Knights of Columbus."

It is not clear from this language that the incorporators dedicated the real property to any organized body of the Knights of Columbus. It certainly does not say that it was organized for the purpose of building and maintaining a building for the meeting or meetings of the subordinate body, Bristol Council No. 379 of the Knights of Columbus. There is no restriction anywhere in the articles upon the rights of the stockholders to receive an income from their investment in complainant's stock, if the revenue from complainant's realty was capable of yielding such income. If it was intended by the incorporators to organize a nonbusiness and nonprofit corporation for a charitable purpose, such as set out in sec. 2 of this tax exemption statute which we are considering, it could have been done very easily under title III of chap. 1925, P. L. 1920.

Apparently such was not the intention of the incorporators or of the stockholders, as is evidenced by the fact that no claim was ever made by the complainant for exemption from taxation until 1936, when it first petitioned the board of tax assessors for such exemption. For fifteen years prior thereto

the complainant paid without protest the taxes assessed on its real property.

It appears that some time after October 6, 1921, the date when complainant received its articles of association, it adopted by-laws, just when we are not informed. The following sections of article I thereof are in evidence: "Section 1—The name of the Club shall be the Knights of Columbus Building Association of Bristol, R. I., Inc. Section 2—The object and purposes of this Club shall be to acquire and maintain a home and meeting place for the members of the Knights of Columbus, a fraternal organization of the Town of Bristol, in the State of Rhode Island, to provide for the social and intellectual development of said members by furnishing facilities for their education and for the relief, support and care of worthy and indigent members of the fraternity by the application of the entire net income of said organization to the aforesaid object and purposes." These by-laws do not, in our opinion, change the character of the corporation. Certainly complainant cannot, by merely adopting a by-law which includes some of the language of the exemption statute, qualify itself for exemption from taxation under such statute.

The part of the statute under which complainant claims the privilege of exemption has not heretofore been construed by this court. Another part of it has, however, been involved in several cases, and in all of them it has been held that the statute should be strictly construed in favor of and not against the taxing authorities. *Society for the Preservation of New England Antiquities* v. *Tax Assessors of Newport,* 62 R. I. 302; *Woonsocket Hospital* v. *Quinn, C. T.,* 54 R. I. 424; *City of Providence* v. *Hall,* 49 R. I. 230.

In the last-cited case, at page 239, it was said: "It has been our settled policy closely to scrutinize statutory exemptions from taxation because the less property subjected to the tax the greater the burden on the remaining property owners of the town." It doubtless was not intended by such statement to create the impression that this court had adopt-

ed a policy at variance with that of the legislature; but rather that, in giving effect to the expressed policy of the legislature, it had been and was the purpose of this court to exercise extreme vigilance to see to it that no one was accorded the privilege of exemption from taxation, which this policy confers, who did not clearly fulfill the requirements laid down in the statute. We approve this policy, and under it the burden is not upon the taxing authority to show that the applicant for the exemption does not meet such requirements, but is upon the applicant to show that he does. *City of Providence* v. *Hall, supra.*

An analysis of the pertinent part of sec. 2 of such statute shows that those requirements are (1) a fraternal corporation, association or body created to build and maintain a building for its meetings and the accommodation of other fraternal bodies or associations; (2) exclusive application by such corporation, association or body of the entire net income, which it derives from the exempted property, for the free education or relief of the members of such fraternity, or for the relief, support and care of worthy and indigent members of the fraternity, their wives, widows or orphans. These two requirements are indispensable conditions precedent to the granting by the assessors of the exemption claimed. It is clear from what has already been said that complainant does not meet the first requirement. It is not a "fraternal corporation, association or body" specially created to hold real and personal property for, or to build and maintain a building for, the meetings of such an organization.

But even if we were to assume that the complainant substantially met the first of the above requirements, we are of the opinion that it has not, on the record before us, completely met the second. The trial justice apparently concluded that the complainant's by-laws brought it within the purview of this portion of the exemption statute so as to entitle it to relief. In doing so he relied to a large extent upon an interpretation of the word "social", appearing in section 2, article I of complainant's by-laws, previously

quoted, as being used only in the sense of the charitable work now known as social welfare or relief work.

The respondents, however, contended strongly that the ordinary meaning of the word "social", and a primary one, as set forth in Webster's New International dictionary (2d ed. Unabridged, 1934), is "companionship or intercourse with others, especially for the sake of diversion"; and they further argued that even if there were doubt as to its proper meaning in these by-laws, the court should "adopt the view in favor of taxation, unless compelled to do otherwise because of long-continued conduct or prior decisions". *New England Antiquities Society* v. *Tax Assessors of Newport, supra.*

Which of these interpretations was correct need not be decided, as that alone is not decisive of the cause. In any event, the burden was on the complainant to prove not merely that its by-laws limited the application of its income to the charitable purposes expressed in the statute, but also that its entire net income was actually applied *exclusively* for those purposes. This does not appear in the record before us. The evidence does not show that none of the complainant's income was used for the maintenance of a "Club", as it described itself in section 1, article I of its by-laws. While this may or may not be so as a fact, there is nothing in the record before us to absolutely exclude such a use of at least some of its income. That being so, the complainant had not met the second requirement of exclusive application of its entire net income for the charitable purposes set forth in the statute.

It is significant also to note that the element of long-continued conduct weighs against, rather than in favor of, the complainant. For fifteen years it neither objected to assessments nor protested payment of taxes assessed against it. While we are of the opinion that such fact does not work an estoppel, as contended by respondents, nevertheless it does cast further doubt on the claim of the complainant that no

part of its net income was expended for purposes other than the charitable purposes set forth in the statute of exemption.

The appeal of the respondents is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to enter a decree dismissing the bill.

*James J. Corrigan, John T. Keenan,* for complainant.

*Henshaw, Lindemuth & Siegl, Daniel S. T. Hinman, James O. Watts,* for respondents.